**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 20-2263

———————

NORTHFIELD CITY BOARD OF EDUCATION

v.

K.S., on behalf of L.S.,

Appellant

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:19-cv-09582)
District Judge: Honorable Robert B. Kugler

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 26, 2021

Before: HARDIMAN, GREENAWAY, JR., and BIBAS, *Circuit Judges*

(Filed: March 30, 2021)

———————

OPINION[*]

———————

BIBAS, *Circuit Judge*.

Though a school must help a student with her disabilities, it cannot help before it knows

of them. L.S. struggled at her new middle school. Near the end of her first year there, she

was hospitalized for suicidal thoughts. Later, she was diagnosed with anxiety, depression,

———————

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

and post-traumatic stress disorder. So the school formed a plan to help. Her mother sued the school for not catching her disabilities sooner. But the school acted reasonably based on the information it had. Her mother also blames the school for keeping L.S. in general-education classes during sixth grade. Yet once K.S. sued, the school could not move her daughter into special education. So we will affirm the District Court's grant of summary judgment for the school.

## I. BACKGROUND

### A. Fall semester 2016

L.S. needed regular therapy because of childhood trauma. So when she began attending Northfield Community Middle School as a fifth-grader, her mother, K.S., told the school of her daughter's emotional difficulties. She informed a teacher that L.S. had "a history of trauma" and was "having a little difficulty adjusting to her new surroundings." JA 365. And she told a school counselor that L.S. had "engaged in self-harm." JA 364.

That fall, L.S. did well in most of her classes and showed writing talent, but struggled in math. When K.S. reached out to her math teacher for help, the teacher found her a math tutor and offered "to help her anytime during the school day." JA 363.

### B. Spring semester 2017

The next semester, L.S. still struggled in math. So in late January, K.S. asked the school to evaluate her daughter for special education. But after looking at her grades and talking with her teachers, the school decided that she did not have a disability and did not need special education. Though she had a C in math, she was doing well in her other classes. She did, however, have some emotional problems. Sometimes, she acted out. She did not

2

get along with certain classmates. And K.S. thought she might be depressed. So the school put L.S. into a program to address those emotional issues. She started meeting with a social worker a few times a week.

By April, L.S. had grown "very depressed." JA 449. She was "often tearful," did not like going to class, and did not want to see her friends. JA 448. She also admitted that she was cutting herself with a paper clip. Worried about her safety, the social worker encouraged K.S. to take her to a hospital for a psychiatric evaluation immediately. L.S. ended up staying at a hospital for five days.

When she returned, the school had a transition plan in place: The social worker would meet L.S. for counseling every day. The school would let her avoid other students by eating lunch in the library and arriving to each class late. And it would move her English and math classes to the morning so that she could go to an outpatient facility in the afternoon.

The school also reevaluated L.S. for special education. Because her emotional problems had grown severe enough to interfere with her education, the school classified her as "emotionally disturbed." JA 532. It also developed an Individualized Educational Program for the next school year. Under the Program, L.S. would get to retake tests, use a calculator and reference aids in class, and have extra time on assignments. She would also have frequent counseling sessions and a special math class. That summer, a psychiatrist diagnosed her with anxiety, depression, and post-traumatic stress disorder.

**C. Procedural history**

But before the next school year started, K.S. filed an administrative complaint. She charged the school with violating the Individuals with Disabilities Education Act. K.S. claimed that the Program did not do enough for L.S.'s emotional needs. And she blamed the school for not catching L.S.'s problems earlier. When the new school year arrived, the school did not implement L.S.'s Program but kept her in general education. But it provided an aide to sit with her throughout the school day.

After a hearing, the administrative law judge found that the Program was fine and the school acted reasonably in waiting to evaluate and classify L.S. But the judge decided that the school should have implemented the Program instead of keeping her in general education. So she awarded L.S. compensatory education for the special math classes she had missed.

The District Court agreed that the school had classified L.S. in time and provided a proper Program. *Northfield City Bd. of Educ. v. K.S. ex rel. L.S.*, No. 19-9582, 2020 WL 2899258, at *9 (D.N.J. June 3, 2020). But it reversed the grant of compensatory education, holding that federal law barred implementing the Program after K.S. sued. *Id.* at *12.

K.S. now appeals to us. She no longer says that the Program was inadequate. Instead, she seeks compensatory education to make up for the special education L.S. missed in fifth and sixth grades. We will affirm. The school reasonably waited to evaluate her, and it properly kept her in general education.

4

## II. The School Timely Evaluated L.S. for a Disability

K.S. claims that the school did not catch L.S.'s disability in time. Both the administrative law judge and District Court disagreed. We review the District Court's factual findings for clear error. *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 268 (3d Cir. 2012).

A school must promptly identify all its disabled students "who are in need of special education." 20 U.S.C. § 1412(a)(3)(A). This is called the "child find" requirement. *Id.* Once the school is on notice that a student might be disabled, it must evaluate her "within a reasonable time." *W.B. v. Matula*, 67 F.3d 484, 501 (3d Cir. 1995), *abrogated on other grounds by A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 795 (3d Cir. 2007). But some disabilities are hard to diagnose. So the school's actions need only be reasonable based on what it knew at the time. *Ridley*, 680 F.3d at 272. Plus, "schools need not rush to judgment." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 252 (3d Cir. 2012). They may take intermediate steps "en route to eventually finding a disability." *Id.*

### A. The school was not on notice of a potential disability by fall 2016

First, K.S. says that the school had notice of the need for special education from the start of the school year. Not so. Though K.S. did tell L.S.'s teacher in October that she "struggl[ed]" in math, she earned a B and then a C that fall. JA 363. And though K.S. told a teacher and a counselor about some emotional problems, the school "lack[ed] … context." *Northfield*, 2020 WL 2899258, at *9. The school knew only that L.S. had "a history of trauma"—nothing more. JA 365. Plus, her behavior at school seemed "mild[]." *Northfield*, 2020 WL 2899258, at *9. The school had little if any evidence that these emotional problems were impeding her learning.

**B. The school reasonably delayed fully evaluating L.S. in the spring**

K.S. also faults the school for not fully evaluating L.S. when she asked in January. But the school made a reasonable choice based on the information it had. It looked at L.S.'s grades and talked with her teachers as well as with K.S. She was passing math and earning A's and B's in her other classes. So the school reasonably decided that her needs were emotional, not educational. *See D.K.*, 696 F.3d at 251.

Still, the school acted. Her math teacher recommended a tutoring program and a mentor. The school put L.S. in a program for "her emotional needs and motivation." JA 392. The school social worker met with her regularly. And when L.S. returned from the hospital, the school had a transition plan in place and agreed to reevaluate L.S. for an educational disability.

The District Court rightly decided that the school did enough to find L.S.'s disability promptly. So L.S. has no right to compensatory education for her fifth-grade year. *See D.K.*, 696 F.3d at 249.

**III. THE SCHOOL HAD TO KEEP L.S. IN GENERAL EDUCATION DURING K.S.'S SUIT**

Next, K.S. faults the school for not putting L.S. into her planned special education after she sued. But it could not. Once a parent sues, the school "shall" leave the student in her "current educational placement" until the suit is over. 20 U.S.C. §1415(j). This is known as the "stay-put rule." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 118 (3d Cir. 2014). To be sure, a school and parent can agree to move the student to her new placement. 20 U.S.C. §1415(j). But if they do not agree, as here, the school must keep the "educational status

quo," whether that is general education or a Program. *Ridley*, 744 F.3d at 118; *see Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996).

For L.S., the District Court said the status quo was general education. The school had planned to put L.S. into a Program for sixth grade. But she had no Program in fifth grade. Because K.S. sued over the summer, the District Court reasoned, L.S.'s Program was her *projected* placement, not her current one. We review the District Court's finding de novo. *D.M. v. N.J. Dep't of Educ.*, 801 F.3d 205, 211 (3d Cir. 2015).

For the first time on appeal, K.S. claims that the Department of Education has "decreed that the [Program] controls [L.S.'s] placement." Appellant's Br. 24. She points to a regulation stating that a "child's placement … [i]s based on the child's [Program]." 34 C.F.R. § 300.116(b)(2). But this regulation just defines what a placement is. It says nothing about what counts as a *current* placement when a child is between Programs or does not yet have one in place.

So we must decide what L.S.'s current placement "actually" was when K.S. sued. *Drinker*, 78 F.3d at 867. It was general education. True, the Program projects a start date of June 12, over the summer. But as the administrative law judge found, K.S. and the school "agreed that … [the Program] would be implemented on the first day of school in September." JA 1944. The Program could not start until the school year did. Over the summer, L.S. did not need extra time for projects or to retake tests. The Program itself recognized this, specifying that its two main features (special math classes and counseling) would start on September 4. So L.S. had to stay in general education and has no right to compensatory education for her sixth-grade year either. *D.K.*, 696 F.3d at 249.

\* \* \* \* \*

Some educational disabilities are hard to spot. The District Court rightly found that the school did not err by waiting to evaluate L.S. or by leaving her in general-education classes. So we will affirm.